**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Leopold Krist, also known as Lee Krist, <br><br> Plaintiff, <br><br> v. <br><br> State of Arizona, et al., <br><br> Defendants. | No. CV17-2524 PHX DGC <br><br> **ORDER** |

Defendants the State of Arizona, Arizona State University ("ASU"), ASU Board of Regents ("ABOR"), ASU School of Art, ASU Professors Adriene Jenik, Betsy Schneider, Julie Anand, and Mark Klett, and a representative of ASU's Office of Student Rights and Responsibilities (Dawn Russo), have moved to dismiss under Rule 12(b)(1), (5), and (6). Doc. 24. The motion is fully briefed and no party requests oral argument. Docs. 27, 31. For the reasons stated below, the Court will grant the motion and grant Plaintiff's request for leave to amend.[1]

**I.  Background.**

For purposes of this motion, Plaintiff's factual allegations are accepted as true. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Plaintiff Lee Krist enrolled in a graduate photography program at the ASU School of Art in July 2015. Doc. 19 ¶ 13. He received

---

[1] Defendants failed to comply with the Court's October 25, 2017, order requiring the parties to confer before filing motions to dismiss. Doc. 15. The Court will address the motion on the merits, but grant Plaintiff leave to amend because it appears that some defects could have been cured if Defendants had complied with the Court's order.

a teaching assistantship ("TA") position, which covered 80% of his tuition and provided a stipend of $3,000 per semester. *Id.* Plaintiff is "a transgender man who experienced many medical issues" while enrolled at ASU, including post-traumatic stress disorder, depression, anxiety, suicidal ideation, and multiple surgeries. *Id.* ¶¶ 15, 18, 19, 35, 38. In September 2015, he registered with ASU's Disability Resource Center ("DRC") and requested accommodations. *Id.* ¶ 22. ASU granted an accommodation allowing him to arrange flexible assignment deadlines with his professors. *Id.* ¶ 23. In November 2018, Plaintiff left Professor Anand's class early after "several fellow graduate students bullied and demeaned" him and Professor Anand did not intervene. *Id.* ¶ 24. He notified Professor Anand and Professor Jenik, then head of the School of Art and Plaintiff's mentor, about the incident, but his concerns went unaddressed. *Id.* ¶¶ 24-26.

In December 2015, Plaintiff was again demeaned in class. *Id.* ¶ 28. He then decided "to let his peers and professors know that he was having medical issues that affected his work output." *Id.* ¶ 29. In January 2016, Plaintiff decided to reduce his course load and delay graduation. *Id.* ¶ 31. Professor Schneider agreed that Plaintiff could participate in her class without enrolling in it. *Id.* Plaintiff requested that this information be kept confidential. *Id.* The next month, on a day when Plaintiff was absent, Professor Schneider informed the class that Plaintiff was auditing her course and that he was only enrolled in one course that semester. *Id.* ¶ 33.

On February 23, 2016, Plaintiff was hospitalized after having surgery. *Id.* ¶¶ 35-36. Professor Jenik visited Plaintiff in the hospital to discuss Plaintiff's concerns about Professor Schneider. *Id.* ¶ 36. Shortly thereafter, Plaintiff received an e-mail from Professor Schneider inviting him to return to class and asking to discuss "the tone of his last email." *Id.* ¶ 37. During the next few months, Plaintiff's health problems worsened, and his concerns regarding bullying and discrimination went unresolved. *Id.* ¶¶ 38-47. On April 28, 2016, a fellow graduate student sent an e-mail to Plaintiff, Professor Schneider, and Plaintiff's colleagues "questioning [Plaintiff's] inclusion and participation in the" program. *Id.* ¶ 42. Plaintiff reported the e-mail to Professor Klett, but received no

response. *Id.* ¶ 43. On May 19, 2016, the ASU Office of Equity and Inclusion opened an investigation of Plaintiff's complaints. *Id.* ¶ 48.

On June 2 and 3, 2016, Plaintiff called the ASU mental health crisis line multiple times, and the police were sent to his residence for a welfare check. *Id.* ¶ 49. The following week, the ASU administration held meetings with the DRC, ASU's counseling center, and Professor Jenik, to discuss Plaintiff's situation. *Id.* Plaintiff left Phoenix on June 21 to present at a conference in New York, but continued to communicate with Professor Jenik regarding accommodations. *Id.* ¶¶ 49-50. Professor Jenik informed Plaintiff that he would need a "seriously mentally ill" ("SMI") diagnosis to receive the accommodations he was requesting. *Id.* ¶ 49. On July 25, Professor Jenik informed Plaintiff that his request to spend the fall semester in New York was denied. *Id.* ¶ 52. On July 29, Plaintiff e-mailed Professor Jenik photographs that he had taken at a photo shoot in New Jersey. *Id.* ¶ 54. The School of Art characterized one of the photographs as threatening, and reported it to police. *Id.* ¶ 55.[2]

On August 1, 2016, Ms. Russo informed Plaintiff of his interim suspension and prohibition from entering the ASU campus because of a pattern of threatening and problematic behavior, including sending an e-mail to a faculty member with a picture of a "puppet holding a gun and a note." *Id.* ¶ 56. On the same day, Professor Jenik rescinded Plaintiff's TA position because he was not in good academic standing. *Id.* Plaintiff alleges that Professor Jenik had decided to ban Plaintiff from campus and notified Plaintiff's peers of this decision two days before Plaintiff sent the allegedly threatening e-mail. *Id.* ¶ 64. Plaintiff has not returned to Arizona since he left in June 2016. *Id.* ¶ 50.

---

[2] Defendants submit a copy of this photograph and various other documents as exhibits to their motion. *See* Doc. 24-1. Plaintiff objects to the Court's consideration of the exhibits, arguing that they are incomplete or unauthenticated. Doc. 27 at 2. Given this dispute, the Court will not consider the exhibits as incorporated by reference into the complaint. *See Marder v. Lopez*, 450 F.3d 445, 448 (9th Cir. 2006) (incorporation by reference is unavailable when a "party questions the authenticity of the copy attached to the" motion). The Court declines to consider the exhibits and convert the motion to one for summary judgment at this early stage. *See* Fed. R. Civ. P. 12(d).

Plaintiff filed this suit on July 28, 2017. Doc. 1. Plaintiff's amended complaint asserts claims for deprivation of civil rights under 42 U.S.C. § 1983, and state-law wrongful termination, intentional infliction of emotional distress, and false light invasion of privacy/defamation. *Id.* ¶¶ 66-105. Plaintiff seeks injunctive relief and compensatory and punitive damages. *Id.* ¶ 105.

## II. Analysis.

### A. Non-Jural Entities.

In Arizona, governmental entities "possess only those powers and duties delegated to them by their enabling statutes," and therefore "may be sued only if the legislature has so provided." *Braillard v. Maricopa Cty.*, 232 P.3d 1263, 1269 (Ariz. Ct. App. 2010). Defendants concede that ABOR can be sued pursuant to A.R.S. § 15-1625(B)(3), but they argue that no statute authorizes suits against ASU or the School of Art. Doc. 24 at 7. A.R.S. § 15-1601 enables ABOR to create and maintain ASU, but contains no indication that ASU or its schools and departments may be sued. *See Lazarescu v. Ariz. State Univ.*, 230 F.R.D. 596, 601 (D. Ariz. 2005) ("The effect of Arizona Revised Statutes §§ 15-1601 and 15-1625 is clear. Arizona State University cannot be subject to suit because the Arizona Legislature has not so provided. However, [ABOR] is an entity subject to suit pursuant to § 15-1625.").

Plaintiff argues that "over the recent years, [ASU] has acted as its own entity aside from [ABOR] and these actions should warrant a new look at the interpretation of the statutes." Doc. 27 at 7. Plaintiff asserts that ASU has "acted as an entity with its own inherent power through contracts, grants, and other activities," but does not otherwise elaborate on this argument or provide legal authority to support it. *Id.* at 8. Plaintiff also argues that ASU and the School of Art have taken actions "arguably akin to a county or city in that they are in essence acting on their own as governmental entities," and therefore can be held liable under *Monell v. Department of Social Services of City of New York*, 436 U.S. 658 (1978). Doc. 27 at 7-8. But *Monell* did not extend § 1983 liability to non-jural state entities.

The Court will dismiss the claims against ASU and the School of Art because Plaintiff has not shown that they are jural entities separate from ABOR. *See Kimball v. Shofstall*, 494 P.2d 1357, 1359 (Ariz. 1972) (A governmental entity is non-jural when "[n]either the constitution nor the statutes provide that [it] is an autonomous body with the right to sue and to be sued.").

### B. Sovereign Immunity.

#### 1. The State of Arizona and ABOR.

Defendants argue that the Eleventh Amendment bars Plaintiff's claims against the State of Arizona and ABOR. Doc. 24 at 7-8, 10. Under the Eleventh Amendment, absent express waiver or valid abrogation, a state and the agencies acting under its control are immune from suit in federal court. *P.R. Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc.*, 506 U.S. 139, 144 (1993); *In re Mitchell*, 209 F.3d 1111, 1115-16 (9th Cir. 2000). The Ninth Circuit has held that "ABOR is a division of the State of Arizona entitled to sovereign immunity." *Ariz. Students' Ass'n v. Ariz. Bd. of Regents*, 824 F.3d 858, 865 (9th Cir. 2016).

Additionally, with respect to Plaintiff's § 1983 claims, "a state is not a 'person' for purposes of section 1983. Likewise 'arms of the State' . . . are not 'persons' under section 1983." *Gilbreath v. Cutter Biological, Inc.*, 931 F.2d 1320, 1327 (9th Cir. 1991) (citing *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 70-71 (1989)).

Plaintiff argues that ABOR waived its immunity because ABOR accepts federal funds. Doc. 27 at 9-10, 12 (citing *Phiffer v. Columbia River Corr. Inst.*, 384 F.3d 791, 793 (9th Cir. 2004)). *Phiffer* relied on *Dare v. California*, 191 F.3d 1167 (9th Cir. 1999), and *Clark v. California*, 123 F.3d 1267 (9th Cir. 1997), which held that Congress validly abrogated state sovereign immunity under § 504 of the Rehabilitation Act and Title II of the ADA. 384 F.3d at 792. Those cases involved claims brought directly under the Rehabilitation Act or the ADA.

Plaintiff states that his § 1983 claims are based on violations of "Title VII, Title IX, Family Educational Rights Privacy Acts, . . . ADAAA, and the Rehabilitation Act." Doc. 27 at 11. But Plaintiff's amended complaint does not allege a violation of any of these statutes. It alleges two § 1983 claims based on violations of equal protection, due process, and freedom of speech and association. *See* Doc. 19 ¶¶ 66-84.[3] Moreover, even if Plaintiff had alleged these statutes as the basis for a § 1983 claim, Plaintiff does not explain how he would overcome the fact that the State and ABOR are not "persons" for purposes of § 1983.

The cases abrogating sovereign immunity for claims under the ADA and other federal statutes cited by Plaintiff are inapposite. Plaintiff has not brought claims under those statutes. The Court will dismiss Plaintiff's claims against the State and ABOR.

### 2. The Individual Defendants.

Defendants argue that the Eleventh Amendment bars Plaintiff's claims against the individual state employees acting in their official capacities. Doc. 24 at 7-8 (citing *Will*, 491 U.S. at 70-71 ("[A] suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office. . . . As such, it is no different from a suit against the State itself.")). Plaintiff does not dispute that his § 1983 claims seek monetary relief and are against the individual defendants solely in their official capacities. *See* Doc. 19 at 1 (caption), ¶¶ 86, 92, 105; Doc. 27 at 9. Thus, the Eleventh Amendment bars the § 1983 claims against Ms. Russo and Professors Jenik, Schneider, Anand, and Klett.

### C. Notice of Claim.

Defendants assert that the state-law claims against the individual defendants must be dismissed because Plaintiff failed to personally serve them with a notice of claim as required by A.R.S. § 12-821.01(A). Doc. 24 at 9-10. Plaintiff concedes this and does not

---

[3] In his prayers for relief, Plaintiff requests a declaration that his termination and suspension violated Title VII of the Civil Rights Act of 1964. Doc. 19 ¶¶ 86, 92, 105. But the amended complaint does not allege any claim under Title VII.

argue that there is any basis for excusing his failure. *See* Doc. 27 at 12. The Court will dismiss the state-law claims against the individual defendants. *See Harris v. Cochise Health Sys.*, 160 P.3d 223, 230 (Ariz. Ct. App. 2007) (unexcused failure to comply with § 12-821.01(A) statutorily bars the plaintiff's claims).

### D. Remaining Arguments.

Having found that each of Plaintiff's claims must be dismissed, the Court need not address Defendants' remaining arguments. Plaintiff should nonetheless consider them if he chooses to amend.

**IT IS ORDERED:**

1. Defendants' motion to dismiss (Doc. 24) is **granted**.
2. Plaintiff's request for leave to amend (Doc. 27 at 1) is **granted**. Plaintiff shall file an amended complaint in accordance with this order by April 20, 2018.

Dated this 30th day of March, 2018.

*David G. Campbell*
United States District Judge